The first case for argument this morning is 171895 Reckitt v. Aurobindo. Mr. Nash. Thank you, your honor. May it please the court. The district court in this case committed error when it rewrote the claims in this case to require distinct formulations. For example, claim one in the 032 patent. That particular claim talks about two portions, the first portion and the second portion. So how in your view or why did this court rewrite those claims given what the claims say? Well, the term portion in the ordinary sense of the word and it's ordinary and customary meaning is a part of a whole. Whether it's integrated in or separated from it, there's no distinctness required in the plain and ordinary meaning of the term portion. That plus the addition of the word formulation, which does not appear anywhere in claim one of the 032 patent, which the district court when it applied the word formulation seemed to impart a meaning separate ingredient lists, which the claim doesn't say about separate ingredient lists. The plain and ordinary meaning simply requires two portions. And then it defines those portions by what they do. The first portion is an immediate release form, not formulation. And the second portion is a sustained released form, not formulation. What's the difference between form and formulation? Well, the difference is in the way the district court applied the word formulation. The district court applied formulation to require either two different processes or two different ingredient lists. And in doing so, departed from the ordinary meaning of the word form, which doesn't suggest any particular ingredient list, any particular process. And the district court did that based on prosecution disclaimer of disavow going back to this court's decision in Watson and the parent patent, the 252 patent. But this court as recently as yesterday held that disavow is an exacting standard under which it must be established that the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of the claim term. And the court wants to see expressions of manifest exclusion or restriction. But the court already found in Watson that those statements amounted to a disclaimer in the 252, the parent application. Correct. And so what you're asking us to do is not to have what's already been found to be a clear and manifest expression of limitation. You're asking us not to carry that through to a subsequent application in the same family, a child. Correct. I don't know if it's a child or a grandchild. I can't keep track of the lineage. But you're asking us not to carry it through. But there's already been a disclaimer that was found. So how can you demonstrate to me that the prosecution history of the child obviated the prior disclaimer? Yes. Thank you, Judge Moore. For one thing, the child was a straight continuation. New matter was added. One of the things that the Watson decision relied on was a section in the parent patent that talked about the portions being discrete. That section does not appear anywhere in the 032 patent. More importantly, the 032 patent added a statement that it may be understood that for either the immediate release and or the sustained release portion, the guafenazine and optionally the additional drug may be mixed within the same matrix portion. And that appears in appendix 1406, column 4, lines 11 through 18. So there, in a section of the oath, it's clear that the portions do not have to be discrete. They can be mixed within the same matrix. So that's the opposite of a manifest expression of restriction. That's the patentees putting the world on notice, that we're going for something different and broader here. We're going for the ordinary meaning of the term portion. What section of the oath is this the 032 patent? What is the column and paragraph of the 032 patent that you say was different? Yes, it's column 4, lines 11 through 18. And if you've got the patent up, your honor, it's the last few lines of the carryover paragraph. Can you repeat that, please? What? I'm sorry, the site, your honor? Yes. Column 4. Okay. Lines 11 through 18. Okay. Okay. So that's one thing that the patentee did. I mean, to answer the question you asked, your honor, about how is this different, we should also look at what they did during prosecution. And during prosecution, what they did was they added a bunch of pharmacokinetic limitations to the claims that did not appear in the claims of the parent. And at no time, unlike what happened during the prosecution of the parent, did not distinguish the prior art or the invention from the prior art based on the portions, but instead distinguished it based on these new claim limitations they had added on the pharmacokinetic factors. And then at the same time they did that, your honor, they added a dependent claim, which said, this is dependent claim 3, which says the drug product of claim 1, wherein the portions, the first and second portion, are discrete. That's a clear statement, both during prosecution and in the patent itself, that what the patentees intended here was not a disclaimer or a disavowal, but rather they were intended a broader meaning for portion as it was used in claim 1 of the 032 patent. They intended the plain and ordinary meaning, which is it doesn't have to be discrete or distinct, consistent with what was in the specification of column 4, it could be mixed together. And last but not least from the prosecution, and this appears at the appendix 3356, the patentee told the examiner that the claim drug product is not limited to either a capsule or a bilayer tablet. Those are embodiments that would have discrete portions. They're explicitly telling the examiner that the invention is not limited to that. Again, that's the opposite of an exacting manifest exclusion or restriction. That's the patentee saying, we're intending something different here than what was intended in the parent, based on the disclaimer that was found in Watson. But that doesn't change the language of the claims, right? I mean, claim 1 of the 252 patent, it's identical almost to the claims that we're talking about here. You're pointing to the specification, but the claims are the same. In the parent patent? Yes. Well, the scope is different right from the outset, Your Honor, because the claim in the 252 patent was for a modified release tablet, which is, let's call it narrower than what's claimed in the 032 patent, which claims a drug product. So during the prosecution, they claimed a broader section of the invention that was disclosed in the specification. And in doing so, they made clear to explain in the specification of the 032 patent, as a continuation in part, that the two portions could be mixed together. In other words, not be discrete, not be distinct. And so what the district court did was to set up a claim construction construct where not only did the two portions have to be discrete or distinct, but we also had to show a separate formulation, which isn't in the 032 patent claims at all. The word formulation does appear in the 821 patent, but it does not appear anywhere in the 032 patent claim one. And so we've got a situation where the district court set us up with a set up a claim construction that so significantly departs from the ordinary meaning of the term, either he or Ordobindo had to point to somewhere where there was a disavowal of the ordinary scope. No one did it. No one's pointed to a clear express disavowal of the ordinary meaning of the term portion. And so I wanted to talk about summary judgment if I could, but I didn't want to foreclose any other questions on claim construction. So on summary judgment, even using the district court's claim construction, summary judgment was an error as a matter of law. Reckitt put forth direct evidence that the Ordobindo drug product has two distinct formulations. And it's undisputed on this record that the Ordobindo product has two different and distinct releases of glufenazine. That about a third of the glufenazine is released rapidly within the first hour. So is it your view that the word form, which is used in the 032 patent, differs from the word formulation, which is used in the 821 and the 252 patent, and that that's the one of the critical distinctions that causes the construction of the 032 patent to not be the same as that which is in Watson? Well, it's certainly one of the points, Your Honor, but the real difficulty is the way in which the district court- Where did you make this form versus formulation argument? Well, I think we pointed out throughout our brief, Your Honor, about the impropriety of Where did you make the argument on appeal? And maybe I'm just not remembering it. There's a lot of briefing in this case. But where did you make this argument on appeal that the use of the word form in the 032 patent cannot be construed the same way as the word formulation in the 821 and or the 252 patent? I just didn't see it anywhere. And yet you led your opening argument with it today, and you've repeated it now three separate times in this argument. But where in your briefs can I find it? Well, it's not as explicitly stated as I said. Not in there. I read this case thoroughly. It's confusing. The technology is hard. But you have led your oral argument with a claim construction position that I can't find anywhere in your briefs, nor do I see you having made to the district court below. I mean, are you trying to pull the wool over my eyes in a really complicated case? Absolutely not, Your Honor. I'm sitting here feeling like I must be an idiot. How did I miss that argument since you're leading your oral argument with it? I think I missed it because it's not in your briefs. Well, Your Honor, I can see it's not as explicitly stated, but it's in there. It's in there because we said that- Tell me what page. Well, it's in the section of our briefs, Your Honor, where we talk about the district court departing from the plain ordinary meeting of the term. You don't have to waste any more time. You can, on your rebuttal, let me know what page or where in the blue brief I can find it, since you've mentioned it three times in your oral argument. I understand. I understand the point Your Honor is making. I do think that I've stated it more explicitly than it's stated in the brief. You're well into your rebuttal. Okay. I'll reserve. Thank you. May it please the court. I'm Timothy Kratz, representing Orobindo, the defense in Cross Appellant. There's a lot to unpack here, and I'm going to make some summary statements, but I will absolutely get into whatever details and specifics we can talk about, including the argument with respect to form. I'm happy to address that as well. This is a classic summary judgment case. This is why summary judgment exists in the federal system. There's no chance that this case was ever going to be determined that there's going to be an infringement. They knew it from the beginning. This has been a long and moving target, but the summary judgment was finally granted in this case. It's not clear they knew it from the beginning. It might be fair to say that they should have known it after the claim construction. The Watson case was decided before this case was even brought up, three years before they received our ANDA. They received our ANDA, and it clearly says that this is a sustained release form. It does not have two portions. The ingredient list was in there. They had all the information they know to absolutely understand the conclusion that Judge Stark ultimately had, and what we hope your honors will agree with us as well, from day one. And then as the case progressed, it never got any better. They tested out certain theories. They abandoned those theories. They demanded our samples. We gave them samples. At one point, they had, in their infringement contentions, said, we have imaging data that shows the immediate release portion of our composition, of our tablet, of our thing that is supposedly infringing. We asked them for the data. They fought about giving it to us at that time. We go to court to try to force them to give us. They end up amending their contentions at that point, eliminating all references to imaging data whatsoever. We've still never seen that imaging data. In the Watson case, we found that single formulation tablets were disclaimed in the prosecution history. To what extent does that apply now in this particular case? Your opponent's saying it does not apply. Yeah. Two points with respect to that, your honor. First is, I don't think Judge Stark relies on that in its entirety by any means whatsoever. He does an independent analysis of the child patents and determines that the plain language of this claim, which we'll get into, absolutely requires there to be two portions. Whether portions means part of a whole or not, the fact is what they're ignoring is there has to be two of them. The judge correctly decided that. With respect to the disclaimer, Judge Stark does not rely on that in order to make that determination of what the plain language of that patent says. As it turns out, I don't think there is a disclaimer here. I think your honors could decide on that issue as well because there is no effort ever in the prosecution history of the 032 patent, any attempt to disavow the disavow, to say, now we are trying to claim this broader territory. He stands before you now saying we've submitted a broader patent. That's just not so. The patenting office didn't understand that this was a broader patent by any means whatsoever. They in fact said it's a terminal disclaimer because there's not anything patentably distinct about the child patent versus the parent patent. The applicants accepted that. They understood. Everyone understood this patent was no broader. In fact, it's much more narrow because it had the PK limitations on it as well. This is not a broader patent. This is not a situation... Language online. This invokes the issue of claim distinction between claim one and claim three as well. They're using the word discrete in claim three. Judge Stark solved the problem by using the word distinct in claim one when he explained what the plain language of the claim one was. It seems to me that this extra language in here, for one, is not clear that it's saying that the immediate release portion and the sustained release portion could actually be mixed in the same matrix. It does seem to say either of them can be. But to the extent it does say and in the and or, and it's confusing as to what it is actually saying, the answer is still there has to be two portions. They can be mixed together so that they're not discrete. And discrete is determined in claim three as being something that is, in fact, has a spatial separateness associated with it, a particular spatial separateness to it, which Judge Stark said with respect to claim one is where I can use the word discrete in this claim. We're instead going to say it has to be distinct. You have to have two distinct portions. Their interpretation that this can be proven based on the performance of the drug wipes out entirely the claim language that says there has to be two portions. I'm sorry. I don't know that I followed your answer to the chief judge's question about the language at column four. Was your answer just that you think it's confusing because it says and slash or? Well, at best it's saying it can be just things can be mixed together during the manufacturing. We agree with that. We think that absolutely it could be. You still have to start with two portions. You have to have a portion that is an immediate release formulation or form. You then have to have another portion that is sustained release. If you end up mixing them together in part of your manufacturing process, it does seem that this part of the specification covers that description. That's fine. It's not what we have here. It's not what we have in any example or anything to do with the case, but it's true. It says what it says. Perhaps that would be something that would be allowed. Undoubtedly, in this sentence, under this column four, as well as in the claims themselves, there still has to be two portions. We don't have that situation here. If we had that situation here, then perhaps there would be a way of proving that there are two formulations and there are two forms. It's easy to visualize how that would happen. You would have you start in the manufacturing process with glufenicin. Part of it you mix with rate-releasing, rate-controlling polymers. The other part you don't. Then you put them all together in a grinder with the other excipients, put them all together and form a tablet. You might have, at that point, a tablet that fits this column four. You might have a tablet that does have two portions, so it meets claim one, but they are mixed together. They wouldn't meet claim three because claim three requires that that be discrete. But claim one doesn't say that. Claim one just says it has to have two portions. Then you'd have a situation that would meet column four, where you have this tablet that's been grinded up and mixed together. It started with two portions, got grinded up and mixed together, met claim one, didn't meet claim three. That would you have. That is not what you have here because we have the manufacturing results. They have no testimony that that's what we have here because they did not have an expert that is qualified whatsoever to tell you anything other than what we already know, which is that our tablet is bioequivalent to their branded product. That's what they're trying to get away with. They're trying to get away with the claim not saying what it says, but instead the claim just being, as long as we can show the performance of the tablet, then that's good enough to show that we've got an infringing product. That's not what they claimed. That's not what they should be allowed to claim here. In fact, it's egregious that they actually ask for that type of result. I'm struggling to understand your distinction between, and maybe it's not just yours. Maybe it's Judge Stark's. I don't know, but distinction between discrete and distinct. I don't know what the difference between those two words is, but you seem to think it's meaningful and that claim one is limited to distinct portions and claim three is limited to discrete portions. I don't understand. There's a couple of reasons why it is a difficult thing to understand. One is that they did not ask for a construction of discrete. We don't know and it's not something that's been appealed or issued in this case. We don't really know. This gets down to the claim one has to mean something different than claim three. What Judge Stark did with it was he said, we're not going to require there to be a particular spatial difference between these. We're not going to be particular about the spatial distance between the two portions in claim one. In claim three, discrete does seem to imply that it has to have a particular spatial orientation. You would have a tablet that has all the immediate release portion on one side and all the extended release portion on the other, or a capsule that has beads and some of the beads are immediately releasing beads and some are not. Then you can sit there and say, those things are absolutely separate and discrete from each other. There would be a physical separation between the two. Claim one, Judge Stark said that the two portions have to be distinct. He said, that means that there's going to imply some physical separateness, but I'm not going to require a particular spatial location of those things. Example of what would be broader than the examples you gave me for discrete? One would be as if it was just pressed together. You have the portion that had the guafenicin mixed with rate controlling polymers and a guafenicin that was ready to be released immediately. You just press them together in the tablet with the acceptance. You made a tablet out of that. Then when you look under the microscope, you might not be able to tell the separateness of the portions, but you know it's there because you know that they were made differently. It was made with two portions. That would be one way to have a tablet. The fact that there was a bleeding of these rate controlled guafenicin is over here, as opposed to over here, you would have a situation where claim one says it doesn't matter. It's still a violation. It doesn't matter if it's perfectly distinct as is required in claim three. You would have a tablet that has two portions, and the two portions are one of them immediate release, and the other one sustained release. We know that's true because this is how they did it. Now, a lot of this is hypothetical. The reason why it's hypothetical is, first of all, our product doesn't do that at all. Our product is a sustained release formulation, single formulation. How do we know that? It's what the ANDA says. What evidence do we have that that's not true? Nothing. They didn't take a single deposition. They didn't have any expert analyze the thing. They didn't even take our expert's deposition. This case was decided on summary judgment, not based on that expert. They didn't even bother to take his deposition to create any doubt at all about there being a genuine issue of fact in this case. There's none. They didn't do that. They had one expert. He was deposed, and he said this, I can't tell you what's in that tablet. I can't tell you how the dissolution results I'm getting, or the PK results that are happening in the ANDA, how that works. I can't tell you that for two reasons. One is, the only way to find that out is if you looked at the ingredient list and the manufacturing process, I wasn't asked to do that. Not only that, I'm not qualified to do that if I was asked. That's their only witness. They didn't come with any evidence in this case at all. They just want you to understand and believe that the way that these claims are written is all we have to do is show performance of the drug. We don't have to show you anything about the tablet that's created and claimed in the patent, but it's a drug product patent. It's not a performance patent. They have PK limitations in there. They want you to believe that that's the only thing that they have to show, and it's just not so. The claims have more than that, and they came with no evidence about that whatsoever. We're in a hypothetical lane with respect to, well, what does discrete mean? What does distinct mean? We're trying to figure out how it could possibly be. The plain language of Claims 1 and Claim 3, for that matter, says you have to have two portions. We don't have two portions. This case is as simple as that at bottom. That's why I started the saying that they knew from the beginning that this was a case that they could not win. That's why summary judgment was decided. We talked about that. That's why this case is exceptional, and we've cross-appealed on this, because if there's ever a case that should be exceptional on this, it's this case and this particular case, because they came with nothing. They never tried to create any doubt about the ultimate result in this study. They buried evidence that they looked at. They at one time said that they thought they had imaging data. They had one expert, and the expert said, I don't know anything about the ultimate issues in this case. And yet, here we are still. I'm happy to answer any more questions. Thank you. Judge Moore, I did go back and look, and I thought when I made the statements earlier that I prefaced it with the issue with the word form, and form versus formulation was in how the district court applied the term formulation. That was the argument I was making. If I wasn't clear, I apologize. Can you repeat what you just said? The district court wasn't doing what? The way the district court applied the word formulation. In other words, what the district court required in terms of proof. When I was making the form formulation argument, what I was trying to say, perhaps inartfully, was that the district court imparted a meaning of formulation that required us to prove certain things, like separate ingredient lists. That argument appears on pages 40, 41, and 42 of our opening brief. And that was the basis of what I had said earlier, Your Honor. In terms of rebuttal on the proof that we had, our expert had 50 years of experience in this field. They sought to exclude him. Judge Stark found him to be qualified to testify and said that he would assist the trier of fact. And what our expert said is that there, based on all the data in the ANDA and the data that resulted from our own testing, was that the Orobindo product has two distinct releases of glufenosine. It has an initial release, which is an immediate release, wherein 33% or thereabouts... That would rebut Orobindo's position? Yes. Yes. The testimony and the analysis of our expert was that it was only possible to have two different releases of glufenosine at two different rates. One very fast, where about half... I'm sorry, about 33% of the glufenosine is released in the first hour. And a second, much slower release, where the remaining two-thirds is released over 12 or 13 hours. That it's only possible for that to occur if there are two formulations. And our expert... That goes to the dissolution rates. Well, the argument that they've made on appeal is that we're conflating the PK factors from the dissolution rate. We're not. The fact is, you can meet the claim limitation on having two different rates of release, an immediate and a sustained, without also meeting the PK limitations. So we're not conflating the two at all. The fact is, there are, without any dispute, two distinct releases of glufenosine. And our expert testified at Appendix 6208. He said that the data supports the existence of both a fast fraction or quantity of glufenosine in an immediate release formulation. And a slow fraction or another quantity of glufenosine in a release-delaying matrix or sustained release formulation. He says it's not singular, homogenous, or a sustained release formulation. Based on the analysis, he says, there is an immediate release quantity of glufenosine within the first hour, followed by, in other words, distinct from a sustained release of a second quantity of glufenosine with an overall biphasic release profile. And he concludes several places in his report, paragraph 72 and paragraph 100, that this is only possible if there is two different quantities, two different forms of glufenosine in the tablet. Thank you. Thank you. I'm going to thank both sides in the cases. The next case.